**CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Timothy A. Barnes
Lizabeth L. Burrell
Heather Elizabeth Saydah

*Counsel to Globe Express Services Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| THE CONTAINERSHIP COMPANY (TCC) A/S | ) | Case No. 11-Civ 12622 (SHL) |
| | ) | |
| Debtor in a Foreign Proceeding | ) | |
| | ) | |

**OBJECTION OF GLOBE EXPRESS SERVICES LTD. TO PETITIONER'S
VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A
FOREIGN MAIN PROCEEDING AND GRANTING FURTHER RELIEF**

Globe Express Services Ltd. ("Globe Express"), by and through its undersigned counsel, hereby objects (the "Objection") to the relief sought in the Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Granting Further Relief (the "Petition"), and respectfully states as follows:

**SUMMARY OF RELIEF REQUESTED**

1. Globe Express respectfully requests that this Court deny the injunctive relief sought by Jørgan Hauschildt ("Petitioner") in connection with the Petitioner's request for recognition of the reconstruction of The Containership Company (TCC) A/S ("TCC"). Such relief would be manifestly unfair to Globe Express, a creditor and contract party who seeks only to have its disputes with TCC heard in New York, the forum which the parties' contract

9801485v2

specifies. The alternative is to force Globe Express, a United States creditor that is party to a contract which invokes the United States as the forum for disputes, either to commence an action in Denmark (in violation of the parties' contract), or to wait for Petitioner, who has failed to notice Globe Express in these Chapter 15 proceedings or to afford Globe Express any status in the underlying reconstruction in Denmark, to begin acting appropriately with respect to Globe Express' claims. Globe Express simply asks that the parties' contractual forum selection clause be honored and that, rather than be forced to wait for its counterparty to start taking appropriate steps towards resolution of the claims, Globe Express be entitled to commence an action on the contract here in New York.

## BACKGROUND

2. Globe Express is a United States company specializing in arranging the transport of freight on container ships, and is party to a certain service contract (the "Contract") with TCC, the company on behalf of which the Petition has been filed. The Contract specifies that the Southern District of New York is the exclusive jurisdiction for resolution of any disputes arising out of or relating to the Contract, and contains a choice of law provision designating the U.S. Shipping Act of 1954 and New York law as governing law.

3. Prior to its modification, the Contract specified that Globe Express was to ship a minimum volume of cargo on TCC's vessels from Taicang, Jiangsu Province, China (the "Taicang Port"), to California during the term of the Contract.

4. During the Contract term, however, factors outside of the control of Globe Express but entirely within the control of TCC interfered with Globe Express' ability to perform under the Contract. Specifically, a dispute arose between TCC and the Shanghai International Port Group ("SIPG"), the exclusive operator of all the public terminals in the Port of Shanghai.

Among other things, SIPG sought to punish TCC for operating its ships from Taicang instead of Shanghai. To do so, SIPG exercised its control over port operations in Shanghai to disrupt the businesses of TCC's customers, including Globe Express.

5. With respect to Globe Express, this disruption included threats against Globe Express' staff, the active blocking of transport and unloading of Globe Express' cargo on other carriers' container ships at Shanghai and other actions that made it impossible for Globe Express to conduct the majority of its business in China. Cargo being transported under any bill of lading showing Globe Express as the shipper was subject to this interference, causing Globe Express to incur delays in shipment, additional loading and unloading costs, and related damage. The net result of this dispute between TCC and SIPG was that Globe Express was unable to ship with TCC under the original terms of the Contract.

6. In correspondence with Globe Express (and, it is understood, with its customers generally), TCC acknowledged that SIPG was making it impossible for TCC's customers to operate. TCC suggested to Globe Express that Globe Express should conceal its identity as shipper -- in other words, falsify bills of lading -- so that SIPG would not target Globe Express' cargoes. For obvious reasons, not the least of which are the national security implications of such an action for cargoes bound for the United States, Globe Express declined to participate in this subterfuge. Although it was under no obligation to do so, Globe Express attempted to craft a limited workaround with TCC such that Globe Express would provide TCC cargo at other ports. Such a workaround could never completely cure the issues caused by TCC's dispute with SIPG, as Globe Express could not provide TCC the volume of goods out of such other ports as it could from the Taicang Port.

7. While the workaround was an attempt to minimize the impact of the interference with the Contract, Globe Express made clear to TCC, through numerous oral and written communications, that Globe Express had incurred costs and resulting claims against TCC and that Globe Express would hold TCC accountable for those damages (the "Causes of Action"). It is indisputable that TCC is and was aware of the Causes of Action.

8. On April 8, 2011, TCC filed a petition for reconstruction (the "Danish Reconstruction") under Danish law. Reconstruction is an entirely new and virtually untested remedy under Danish insolvency law, having gone into effect on April 1, 2011 (just one week prior to the commencement of the Danish Reconstruction) as the result of amendments to Danish insolvency law enacted by their parliament. Upon information and belief, a Danish reconstruction has yet to be recognized under Chapter 15 in the United States.

9. Despite the commencement of the Danish Reconstruction and TCC's knowledge of the Causes of Action, Globe Express has been given no formal notice of the Danish Reconstruction and has been afforded no treatment as a creditor in that process. Globe Express' only knowledge of the Danish Reconstruction has come from the news generally available to the public and the Petitioner's informal attempts to collect from Globe Express under the Contract.

10. On May 31, 2011, the Petitioner filed the Petition seeking recognition as a foreign main proceeding of the Danish Reconstruction and related relief. As with the Danish Reconstruction, Globe Express was not noticed as part of the Chapter 15 filing. Globe Express only became aware of the Chapter 15 filing when informed of such by Danish counsel that Globe Express sought to retain to answer the Petitioner's demands.[1]

---

[1] Prior to the filing of this Objection, Globe Express' counsel reviewed the docket of the Chapter 15 proceeding for any indication that Globe Express had been served with the Petition or any other pleadings, and found no evidence

11. On June 1, 2011, the Petitioner filed an Ex Parte Application for Provisional Relief Pending Recognition of a Foreign Main Proceeding (Dkt. No. 5) (the "Ex Parte Motion"), seeking the entry of a temporary restraining order enjoining all litigation in the United States against TCC and staying execution against any of TCC's assets in the United States. Had the Court been inclined to grant the Ex Parte Motion, Globe Express, as the holder of the Causes of Action against TCC, would have been enjoined from pursuing its rights despite having been given no notice of the Ex Parte Motion, let alone the Petition itself.[2]

12. As noted above, Globe Express has been in contact with both the Petitioner and TCC regarding the Causes of Action and the amounts Petitioner alleged are due to TCC under the Contract. The most recent contacts with the Petitioner have indicated that the Petitioner is considering commencing suit against Globe Express in New York. While such news is encouraging, as Globe Express wants nothing more than to have these disputes heard in the appropriate forum, without the relief requested, Globe Express will simply be left standing with its hands tied, in a reactive posture towards a party who has continually declined to act appropriately towards it.

## OBJECTION

**Modification of the Automatic Stay Under Section 1506 of the Bankruptcy Code**

13. By seeking recognition under Chapter 15, the Petitioner concomitantly seeks injunctive relief against parties who hold claims against TCC. While it is axiomatic that due process should be given to parties to which such an injunction may apply, the Petitioner has failed to provide either notice or due process to Globe Express in making such request. To allow

---

of such service. Globe Express' counsel also called Petitioner's counsel and requested proof of service. While Petitioner's counsel did file an amended Affidavit of Service (Dkt. No. 12) immediately after that telephone call, Globe Express is also not listed on the amended Affidavit of Service.

[2] The Ex Parte Motion was denied without prejudice by order of this Court dated June 6, 2011 (Dkt. No. 10).

the Petitioner to deny affected parties notice and due process while affording it injunctive relief contravenes the policies underlying the Bankruptcy Code and fundamental principles of United States jurisprudence.

14. While failure to provide notice to creditors may be grounds to deny recognition, Globe Express is not seeking such relief. It is merely seeking a modification of the injunction so as to prevent irreparable harm to Globe Express. To that end, Globe Express requests that this Court exercise its powers under sections 1506 and 362(d)(1) of the Bankruptcy Code to limit the effect of recognition such that the relief granted does not interfere with Globe Express' contractual right to pursue the Causes of Action in the agreed forum.

15. At the very least, the Petitioner should be granted no injunctive relief with respect to Globe Express for one very fundamental reason: Petitioner has failed to afford Globe Express even a modicum of due process. As noted above, the Petitioner failed to provide any formal notice of either the Petition or the Ex Parte Motion to Globe Express. Therefore, the Petitioner has failed to comply with Federal Rule of Bankruptcy Procedure 2002(q)(1) (requiring notice on, among other parties, "all entities against whom provisional relief is being sought under § 1519 of the Code").

16. Moreover, Petitioner has failed to comply with this Court's express directions regarding notice, as stated in this Court's June 6, 2011 Order (I) Specifying Form and Manner of Service of Notice of Filing of Petition and Certain Pleadings Pursuant to Chapter 15 of the Bankruptcy Code Seeking Recognition of a Foreign Proceeding and Requesting Relief in Aid of a Foreign Proceeding, and (II) Scheduling Hearing on Chapter 15 Petition (the "<u>Notice Order</u>"). Paragraph 3 of the Notice Order requires that the Petition and other pleadings be served on or before June 7, 2011 upon "all known creditors of [TCC]".

17. Globe Express only learned of the Petition through happenstance days prior to the objection deadline established in the Notice Order. Such oversight is inexplicable, as both the Petitioner and TCC have been in direct communication with Globe Express regarding the Causes of Action.

18. The Petitioner's attempt to impose a stay against a party without notice or due process also implicates the public policy exception of section 1506 of the Bankruptcy Code, which affords this Court the power to limit the relief granted if the requested relief violates public policy. Section 1506 of the Bankruptcy Code states "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. As this Court is aware, a party's rights to notice and due process are the foundations of the United States justice system, and this Court has both the statutory and equitable power to block the Petitioner's attempt to deprive Globe Express of its rights.

19. More troubling is that the imposition of an injunction would leave Globe Express only one of two options: (1) to seek to have the Causes of Action heard in a forum neither party contracted for; or (2) to wait and hope that the Petitioner abides by the terms of the Contract. The former would force Globe Express to litigate in an unknown forum where its rights may not be protected. As Globe Express has not received notice or been treated as a creditor in the Danish Reconstruction despite knowledge of the Causes of Action, there is no evidence that Globe Express' rights will be appropriately respected in the Danish court. This would deny Globe Express its bargained-for rights with respect to the contractually agreed forum.

20. The latter puts Globe Express in the unenviable position of relying on the Petitioner to act appropriately, which it has failed thus far to do. Given the Petitioner's apparent willingness to have the Causes of Action heard in New York (based on its recent collection threats), judicial economy and the interests of the parties would be best served by allowing the Causes of Action to proceed in New York.

**Modification of the Automatic Stay Under Section 362(d)(1) of the Bankruptcy Code**

21. Should the Court find that the standard for application of section 1506 of the Bankruptcy Code has not been met, Globe Express asks the Court to grant the requested relief under section 362 of the Bankruptcy Code.

22. Section 362(d)(1) of the Bankruptcy Code allows the Court to modify the automatic stay "for cause." Courts in the Second Circuit consider the following twelve factors that may be relevant in deciding whether the stay should be lifted for cause, in order to permit litigation to proceed in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding;

     and
   (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

   23. An analysis of these factors weighs heavily towards modification of the stay.  Regarding factors (1) and (2), relief from the stay to allow Globe Express to pursue the Causes of Action would result in a complete resolution of the issues and would not interfere with either the Chapter 15 case or the Danish Restructuring.  In fact, it is arguable that neither matter can be completed without a determination of amounts due under the Contract.

   24. Concerning factor (4), the Contract designates the Southern District of New York as the appropriate forum.  This factor weighs in favor of modification of the stay because the District Court for the Southern District of New York, as one of the foremost centers for maritime litigation in the United States, possesses the necessary expertise to hear the Causes of Action.

   25. Factor (7) inquires whether the interests of other creditors would be prejudiced by litigation in the agreed forum.  Litigation in the agreed forum, a court that is familiar with United States Maritime and New York law, can only benefit other creditors, by limiting TCC's litigation costs, thereby increasing the funds available for distribution.

   26. Factor (9) is not relevant, as Globe Express does not seek relief to impose a lien or otherwise collect on the Causes of Action.

   27. Regarding factor (10), both judicial economy and the expeditious and economical resolution of litigation would be well served by modification of the stay to allow Globe Express to pursue the Causes of Action.  Litigation in Denmark would undoubtedly lead to additional costs for the parties as Globe Express would be forced to challenge the jurisdiction due to the parties' express contract terms.  Further, judicial economy would not be well served

by a Danish court unfamiliar with New York and United States Maritime law.

28. Factor (12) weighs the most heavily in favor of modification of the stay, as the impact of the stay on Globe Express is grave and the potential for harm to the Petitioner and TCC is nonexistent. If the stay is not modified, Globe Express will be relegated to a foreign forum that arguably lacks jurisdiction over the Causes of Action, leaving Globe Express in what amounts to legal "purgatory," unable to pursue its claim or to defend against TCC's claim until the Petitioner chooses to commence suit. The Petitioner and TCC will not be prejudiced, as they must certainly be prepared at this point to litigate the Causes of Action in this forum (and have recently threatened to do just that). Further, the Petitioner has engaged counsel experienced maritime litigation in this district. It is clear that the balance of harms weighs heavily in favor of modifying the automatic stay to permit Globe Express to pursue the Causes of Action in New York.

## **CONCLUSION**

Based on the foregoing, Globe Express requests that this Court modify the stay applicable upon recognition of the Dutch Reconstruction -- either pursuant to section 1506 or 362(d)(1) of the Bankruptcy Code -- in order to allow Globe Express to pursue the Causes of Action to judgment. Such modification would not allow Globe Express to collect in the agreed forum, absent further order of this Court to pursue TCC's assets in satisfaction of such judgment, if any, and such other relief as is just and proper.

Dated: June 24, 2011
      New York, New York

Respectfully submitted,

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

By: /s/ *Timothy A. Barnes*
    Timothy A. Barnes
    Lizabeth L. Burrell
    Heather Elizabeth Saydah
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

*Counsel to Globe Express Services Ltd.*