**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:                                                    Chapter 15

THE CONTAINERSHIP COMPANY (TCC) A/S,                      Case No. 11-12622 (SHL)

          Debtor in a Foreign Proceeding.


-------------------------------------------------------------------------x

<u>**MEMORANDUM OF DECISION**</u>


A P P E A R A N C E S :

GKG LAW, P.C.
Attorneys for Apex Maritime Co., Inc., Argos Freight, Inc., Barthco International, Inc., LCL
Lines, O.E.C. Shipping Los Angeles, Inc., Pantainer Ltd., T-Z Cargo Limited, Universal
Shipping Inc., Wako Express (HK) Co. Ltd., Multi-Trans Shipping Agency, Inc., Winair
Logistics, Inc., Interglobo North America Inc., CEVA Freight, LLC, Global Forwarding, Ltd.,
US United Logistics (Ningbo), Inc., MCL-Multi Container Line, Inc., Seapassion Logistics, Inc.,
Rocky International, LLC, TT Ocean Logistics, LLC, STD Logistics Ltd., On Time Shipping
Line Ltd. and American International Cargo Service, Inc.
By:     Edward D. Greenberg, Esq.
        David P. Street, Esq.
        Brendan Collins, Esq.
1054 Thirty-First Street, N.W.
Suite 200
Washington, D.C. 20007

HOLLAND & KNIGHT LLP
Attorneys for UPS Ocean Freight Service, Inc. and Ocean World Lines
By:     Barbra R. Parlin, Esq.
        Christopher R. Nolan, Esq.
31 West 52nd Street
New York, NY 10019


By:     J. Michael Cavanaugh, Esq.
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006

LAW OFFICE OF JAMES MALONEY
Attorneys for Pactrans Air & Sea, Inc.
By:    James M. Maloney, Esq.
33 Bayview Avenue
Port Washington, NY 11050

BLANK ROME LLP
Special United States Counsel to Jørgen Hauschildt, Foreign Representative of The
Containership Company (TCC) A/S
By:    Jeremy J.O. Harwood, Esq.
       Marc E. Richards, Esq.
       Rocco A. Cavaliere, Esq.
       Jeremy Herschaft, Esq.
405 Lexington Avenue
New York, NY 10174

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Attorneys for Globe Express Services, Ltd.
By:    Maryann Gallagher, Esq.
       Timothy A. Barnes, Esq.
       Lizabeth L. Burrell, Esq.
       Heather Elizabeth Saydah, Esq.
101 Park Avenue
New York, NY 10178

RODRIGUEZ, O'DONNELL, GONZALEZ & WILLIAMS, P.C.
Attorneys for US Pacific Transport, Inc., Phoenix International Freight Services, Ltd., Union
Logistics, Inc., Translink Shipping, Inc., Pudong Trans. USA, Inc., United Logistics (LAX), Inc.,
Headwin Global Logistics (USA), Inc., Shanghai YiJia International Transportation Co., CMA
CGM Logistics S.A. and Sirius Global Logistics Co., Ltd.
By:    Henry P. Gonzalez, Esq.
       Carlos Rodriquez, Esq.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

STRONGIN, ROTHMAN & ABRAMS LLP
Attorneys for England Global Logistics USA, Inc.
By:    Howard F. Strongin, Esq.
5 Hanover Square
4th Floor
New York, NY 10004

VENABLE LLP
Attorneys for Topocean
By:    Rishi Kapoor, Esq.
       Brian P. Dunning, Esq.
       Edward A. Smith, Esq.
Rockefeller Center
1270 Avenue of the Americas
25th Floor
New York, NY 10020

CARLO & LOZADA, LLC
Attorneys for Phoenix International Freight Services, Ltd. and US Pacific Transport
By:    Gerardo A. Carlo Altieri, Esq.
254 San Jose Street
3rd Floor
San Juan, Puerto Rico 00901

COOPER, BROWN & BEHRLE, P.C.
Attorneys for Seapassion Logistics, Inc., Rocky International, LLC, TT Ocean Logistics, LLC,
STD Logistics Ltd., On Time Shipping Line Ltd. and American International Cargo Service, Inc.
By:    Sandra Gale Behrle, Esq.
420 Lexington Avenue
Suite 300
New York, NY 10170

WINSTON & WINSTON, P.C.
Attorneys for Howard Berger Company
By:    Aleksander Powietrzynski, Esq.
295 Madison Avenue
Suite 930
New York, NY 10017

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion to modify the automatic stay (the "Motion"), pursuant to

Section 362(d)(1) of the Bankruptcy Code.  The Motion was filed by 22 parties, and joined by

more than a dozen others (collectively, the "Movants"), all of whom are defendants in adversary

proceedings filed by the Chapter 15 debtor alleging breach of contract.  The Movants seek to lift

the stay to file complaints before the Federal Maritime Commission alleging violations of the

federal Shipping Act of 1984 (the "Shipping Act") by the debtor.  The Motion further requests

that the Chapter 15 debtor's adversary proceedings against the Movants be stayed indefinitely.

For the reasons set forth below, the Court denies the Motion because it concludes that the

Federal Maritime Commission does not have exclusive or primary jurisdiction over the Movants'

allegations, which are in the nature of defenses to the Chapter 15 debtor's breach of contract

actions.

## **BACKGROUND**

The relevant facts are undisputed.  On April 8, 2011, the Containership Company (the

"Debtor") filed a petition for "reconstruction" in Denmark and a Danish court approved the

"restructuring plan" on April 27, 2011.  On May 31, 2011, the Debtor, through its Danish court-

appointed trustee or "Reconstructor," filed a petition in this Court pursuant to Sections 1504 and

1515 of the Bankruptcy Code, seeking recognition of the Danish reconstruction as a foreign main

proceeding and other related relief.  On July 1, 2011, this Court entered the *Order Granting*

*Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517,*

*1520 and 1521* [ECF No. 24], recognizing the Danish reconstruction as a foreign main

proceeding and the Reconstructor as the Debtor's foreign representative.

On August 1st and August 2, 2011, the Debtor filed approximately 77 adversary

proceedings against certain shippers alleging breach of pre-petition service contracts entered into

between the Debtor and the shippers.  The relevant contracts each included a minimum quantity

commitment ("MQC"), requiring the shipper to tender a certain quantity of containers to the

Debtor within the term of the contracts.  The complaints in the adversary proceedings assert that

the shippers breached these service contracts by failing to meet the specified MQCs, and they

seek liquidated damages plus interest and reasonable attorneys' fees.  The service contracts

provide that, "[i]n case of a dispute arising under or relating to this contract, the Shipper and the

Carrier each agree to jurisdiction in the United States District Court for the Southern District of New York." Motion, Exhibit D.

On August 19, 2011, some of the defendants in the adversary proceedings filed a *Motion to (A) Modify the Automatic Stay to Allow Movants to File Claims Against the Debtor and Permit the Federal Maritime Commission to Exercise Jurisdiction Over Actions Alleging Violations of the Shipping Act of 1984 and (B) Stay Related Adversary Proceedings* [ECF No. 107]. The Motion was filed on behalf of 22 parties[1] and an additional 16 parties seek to join in the Motion.[2] The Movants contend that the Debtor violated the Shipping Act of 1984 and that Debtor's conduct should be brought to the attention of the Federal Maritime Commission (the "FMC"). More specifically, the Movants complain that the Debtor seeks liquidated damages from Movants for failure to satisfy the MQC requirements of their contracts, even though the Debtor allegedly engaged in the following conduct in violation of the Shipping Act:

- Debtor unilaterally ceased operations and terminated the service contracts before their expiration such that it was impossible for Movants to meet the MQC requirements.

- Debtor failed to provide space and equipment sufficient to enable Movants to meet their MQC requirements.

- Debtor unilaterally terminated the service contracts allegedly "without penalty."

- Debtor's contract with one or more Movants provided that, if the Debtor terminated its service on the single trade lane it served, the MQC requirements would automatically be

---

[1] The Movants are: Apex Maritime Co., Inc.; Argos Freight, Inc.; Barthco International, Inc; O.E.C. Shipping Los Angeles, Inc.; Pantainer Ltd.; T-Z Cargo Limited; Universal Shipping Inc.; Wako Express (HK) Co. Ltd.; Multi-Trans Shipping Agency, Inc.; Winair Logistics, Inc.; Interglobo North America Inc.; CEVA Freight, LLC; Globe Express Services, Ltd.; Phoenix International Freight Services, Ltd.; US Pacific Transport, Inc.; England Global Logistics USA, Inc.; Union Logistics, Inc.; Translink Shipping, Inc.; Pudong Trans. USA, Inc.; United Logitsics (LAX), Inc.; Topocean; and UPS Ocean Freight Service, Inc.

[2] Nine motions to join were filed on behalf of the following parties: Headwin Global Logistics (USA), Inc.; Shanghai YiJia Transportation Co.; CMA CGM Logistics S.A.; Global Forwarding, Ltd.; U.S. United Logistics (Ningbo) Inc.; MCL-Multi Container Line, Inc.; Sirius Global Logistics Co., Ltd.; Ocean World Lines; Seapassion Logistics, Inc.; Rocky International, LLC; TT Ocean Logistics, LLC; STD Logistics, Ltd.; On Time Shipping Line Ltd.; Howard Berger; Pactrans Air & Sea, Inc.; and American International Cargo Service, Inc. The motions to join were unopposed and are granted by the Court.

reduced to the amount of cargo previously carried, yet never filed any contract amendments with the FMC despite agreeing to do so.

- Debtor suggested that at least one Movant engaged in improper practices in connection with its service contract in order to cure the Debtor's breach of such service contract.

- The service contracts are invalid and illusory because the Debtor did not commit to provide a defined level of service as required by the Shipping Act.

Motion, at 16–18 and Exhibit C.  The Movants further assert that the FMC has exclusive and primary jurisdiction to address these allegations, and that continuing with the adversary proceedings would waste judicial resources and raise the possibility of inconsistent determinations.

The Debtor opposes the request to lift the stay, asserting that the Shipping Act violations alleged by Movants are merely disguised affirmative defenses to the breach of contract claims asserted in the adversary proceedings.  The Debtor further notes that, by statute, breach of contract disputes for service contracts are to be addressed in an "appropriate court," and not the FMC.  The Debtor, therefore, contends that the FMC does not have exclusive or primary jurisdiction over Movants' allegations.  Finally, the Debtor relies on the forum selection clause in the service contracts to justify jurisdiction in this Court over all these disputes.

### DISCUSSION

**A.    Standard for Relief from the Automatic Stay**

Section 362 of the Bankruptcy Code provides that "a petition filed under section 301, 302, or 303 of [the Bankruptcy Code] . . . operates as a stay, applicable to all entities," of certain actions taken against a debtor or the property of the estate.  11 U.S.C. § 362(a).  The automatic stay prohibits, among other things, "the commencement or continuation" of any "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case" or "to recover a claim against the debtor that

arose before the commencement of the case." 11 U.S.C. § 362(a)(1). Such a stay is effective in

a Chapter 15 case where, as here, there has been a "recognition of a foreign proceeding [as a]

foreign main proceeding." 11 U.S.C. § 1520(a). In such circumstances, the stay under Section

362 of the Bankruptcy Code shall apply "to the debtor and the property of the debtor that is

within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a).

Section 362(d)(1) of the Bankruptcy Code provides that a court may modify the

automatic stay for "cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy

Code. In evaluating a motion to lift the automatic stay, courts evaluate the following twelve

factors set forth by the Second Circuit in *In re Sonnax Indus.* 907 F.2d 1280 (2d Cir. 1990):

1. Whether relief would result in a partial or complete resolution of the issues;

2. Lack of any connection with or interference with the bankruptcy case;

3. Whether the other proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5. Whether the debtor's insurer has assumed full responsibility for defending it;

6. Whether the action primarily involves third parties;

7. Whether litigation in another forum would prejudice the interests of other creditors;

8. Whether the judgment claim arising from the other action is subject to equitable subordination;

9. Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10. The interests of judicial economy and the expeditious and economical resolution of litigation;

11. Whether the parties are ready for trial in the other proceeding; and

12. The impact of the stay on the parties and the balance of the harms.

*Id.* at 1286 (citing *In re Curtis*, 40 B.R.795, 799–800 (Bankr. D. Utah 1984)). The decision

whether to lift the stay is entirely within the discretion of the Court, and the Court need only

consider the relevant factors in making its determination.  *See In re Sonnax Indus.*, 907 F.2d at

1286 (reaching its holding after considering only four factors it deemed relevant); *Mazzeo v.

Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (remanding with instructions to apply

the *Sonnax* factors test and noting that not all of the factors may be relevant).   This twelve factor

test also applies where a lift stay motion involves consideration of whether an administrative

agency has primary jurisdiction over the dispute.  *See, e.g.*, *In re Drexel Burnham Lambert

Group, Inc.*, 1990 WL 302177 (Bankr. S.D.N.Y. Dec. 14, 1990) (utilizing six of the twelve

*Sonnax* factors in its analysis involving considerations of primary jurisdiction in deciding to deny

a request to lift the automatic stay).

In deciding whether to lift a stay and allow a creditor to continue litigation in another

forum, a bankruptcy court should consider the "particular circumstances of the case, and

ascertain what is just to the claimants, the debtor and the estate."  *In re Touloumis*, 170 B.R. 825,

828 (Bankr. S.D.N.Y. 1994).   "The burden of proof on a motion to lift or modify the automatic

stay is a shifting one" and rests initially on the moving party to make a showing of "cause" for

relief.  *In re Sonnax Indus.*, 907 F.2d at 1285; *In re Mazzeo*, 167 F.3d at 142.  In the event "the

movant fails to make an initial showing of cause . . . the court should deny relief without

requiring a showing from the debtor that it is entitled to continued protection."  *In re Sonnax

Indus.*, 907 F.2d at 1285.

**B.**      **The Jurisdiction of the FMC**

Central to the Movants' request for stay relief, they contend that the FMC has exclusive

jurisdiction over all their allegations relating to the Shipping Act or, alternatively, that this Court

should defer to the FMC's primary jurisdiction as the regulatory body with expertise over the

Shipping Act.  In resolving this Motion, therefore, the Court must first address the parties' core

disagreement over the role and jurisdiction of the FMC.

In determining the exclusive jurisdiction of the FMC, the Court looks to the statutory

mandate of the FMC.  The FMC is an independent regulatory agency responsible for regulating

"common carriers by water and other persons involved in the oceanborne foreign commerce of

the United States" under provisions of various federal statutes, including the Shipping Act.  46

C.F.R. § 501.2.  *See also* 46 U.S.C. §§ 40101–413.  Furthermore, the legislative history of the

Shipping Act reveals that Congress intended for the FMC to exercise jurisdiction over the

administration of the Shipping Act.  *See Seawinds Ltd. v. Nedlloyd Lines, B.V.*, 80 B.R. 181, 184

(Bankr. N.D. Cal. 1987) (citing Report of the House Committee on Merchant Marine and

Fisheries, H.R.Rep. No. 53(I), 98th Cong., 1st Sess. 3–4, *reprinted in* 1984 U.S. Code Cong. &

Ad. News 167, 168–69); *see also Pasha Auto Warehousing, Inc. v. Philadelphia Regional Port

Auth.*, 1998 WL 188848, at *6 (E.D.Pa. Apr. 21, 1998) (noting that the Shipping Act "granted

the [FMC] exclusive jurisdiction over the [Act]").  The scope of this exclusive jurisdiction,

however, is limited only to "claims involving possible [violations] of the Shipping Acts."  *Pasha*,

1998 WL 188848, at *6.

The FMC's responsibilities under the Shipping Act include regulating service contracts.

*See* 46 U.S.C. § 40502.  The Shipping Act defines a "service contract" as a written contract,

other than a bill of lading or receipt, between one or more shippers, on the one hand, and an

individual ocean common carrier or an agreement between or among ocean common carriers, on

the other.  46 U.S.C. § 40102(20).  To qualify as a service contract under the Shipping Act, a

contract must provide for a certain minimum level of services by requiring that:

> (A)    the shipper or shippers commit to providing a certain volume or portion of cargo
>        over a fixed time period; and

- 9 -

(B)    the ocean common carrier or the agreement commits to a certain rate or rate schedule and a defined service level, such as assured space, transit time, port rotation, or similar service features.

46 U.S.C. § 40102(20).

The Shipping Act sets forth certain requirements for service contracts.   For example, the Shipping Act requires that all executed service contracts be filed confidentially with the FMC and also specifies certain "essential terms" be included in each, including the origin and destination port ranges as well as specifications of the commodities and service commitments involved.  *See* 46 U.S.C. §§ 40502(b) and 40502(c).  Notwithstanding the FMC's regulatory jurisdiction over service contracts, however, it lacks jurisdiction to decide actions for breach of such service contracts:

> Unless the parties agree otherwise, the exclusive remedy for a breach of a service contract is an action in an appropriate court. The contract dispute resolution forum may not be controlled by or in any way affiliated with a controlled carrier or by the government that owns or controls the carrier.

46 U.S.C. § 40502(f).  Consistent with the statutory limits of its jurisdiction, the FMC reviews complaints brought before it to determine "whether a complainant's allegations are inherently a breach of contract claim, or whether they also involve elements peculiar to the Shipping Act." *Cargo One, Inc. v. COSCO Container Lines Co., Ltd.*, FMC No. 99-24, at 12 (Oct. 31, 2000). When making its determination, the FMC places the burden upon the party alleging a Shipping Act violation before the FMC to overcome any presumption to the contrary.  *See, e.g.*, *Anchor Shipping v. Alianca*, FMC No. 02-04 (FMC May 10, 2006) (applying the *Cargo One* test and concluding that movant's complaint was prematurely dismissed since the party alleged certain violations that were "particular" to the Shipping Act).[3]

---

[3]    The FMC has noted that "allegations essentially comprising contract law claims should be dismissed unless the party alleging the violation successfully rebuts the presumption that the claim is no more than a simple contract breach claim.  In contrast, where the alleged violation raises issues beyond contractual obligations, the [FMC]

In discerning the dividing line between a mere contract dispute and an alleged violation that is "particular" to the Shipping Act, this Court turns to guidance from the decisions of the district courts and courts of appeals that have addressed this question.  On the one hand, courts have deferred to the FMC to address issues that are specifically and expressly addressed in the Shipping Act, such as whether an entity should be considered a "common carrier" or whether certain shipping practices are illegal and discriminatory and in violation of the Act.  *See, e.g., American Ass'n of Cruise Passengers, Inc. v. Carnival Cruise Lines, Inc.*, 911 F.2d 786 (D.C. 1990) (holding that the FMC had exclusive jurisdiction to adjudicate travel agency's antitrust action against vacation cruise lines and trade associations based on alleged unlawful boycott agreement where cruise lines were found to be common carriers under Shipping Act); *District Council of Port of Philadelphia, Intern. Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 377 F. Supp. 1278 (E.D. Pa. 1973) (holding that the FMC had exclusive jurisdiction to hear complaint in which longshoremen's union sought compensatory damages on ground that various shippers, in violation of the Shipping Act, entered into an unlawful agreement to divert cargo from one port to another).

On the other hand, courts have concluded that disputes not involving matters of technical expertise fall outside the realm of FMC jurisdiction.  *See, e.g., LSB Indus., Inc. v. Prudential Lines, Inc.*, 736 F.2d 10 (2d Cir. 1984) (holding that the issue of what constituted a "full" barge for purposes of interpreting maritime carrier's tariff was within the jurisdiction of the district court, rather than the exclusive jurisdiction of the FMC because issue did not involve reasonableness of rates, interpretation of technical terms, or other FMC expertise); *Port Royal Marine Corp. v. U.S.*, 378 F. Supp. 345 (S.D. Ga. 1974) (holding that the exclusive jurisdiction

---

will likely presume, unless the facts as proven do not support such a claim, that the matter is appropriately before the agency." *Cargo One*, FMC No. 99-24, at 12 (Oct. 31, 2000).

of the FMC over ocean carrier rates did not operate to extend its authority to plaintiff's charges

for a "lighter-aboard ship" towage service to ocean carriers which were alleged to be incidental

to foreign movement).  Similarly, interpretation of leases or contracts does not fall within the

realm of the agency's expertise.  *YangMing Marine Transp. Corp. v. Formost Int'l, Inc.*, 1990

WL 17729 (S.D.N.Y. Oct. 3, 1990) (interpreting contract); *see also Pasha*, 1998 WL 188848

(declining to defer to the FMC where interpretation of leases was "well within the conventional

expertise of a court" and "not the FMC's traditional area of expertise").

Even if this Court concludes that the FMC does not have exclusive jurisdiction over

Movants' allegations, however, the Court may defer to the FMC under the doctrine of primary

jurisdiction.  As the Second Circuit has explained, "[p]rimary jurisdiction is a doctrine that is

used to determine whether a given issue should be passed on first in a judicial or administrative

forum.  In other words, it fixes priority for passing on a given issue." *General Elec. Co. v. MV

Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987).  "In determining whether to defer, courts should

determine 'whether the reasons for the existence of the doctrine are present and whether the

purposes it serves will be aided by its application in the particular litigation.'" *Id.* (quoting

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).  But "[t]he party seeking to impose

the primary jurisdiction doctrine bears the burden of demonstrating its application . . . [and]

[c]ourts should refrain from reflexively applying the doctrine simply because litigation touches

on an area within the expertise of an agency." *In re Budeprion XL Marketing & Sales Litig.*,

2010 WL 2135625, at *13 (Bankr. E.D. Pa. May 26, 2010); *see also Phone-Tel Commc'n, Inc. v.

AT&T Corp.*, 100 F. Supp. 2d 313, 316 (E.D.Pa. 2000).  The scope of the primary jurisdiction

doctrine is "relatively narrow" and that doctrine applies only "when the issue involves technical

questions of fact uniquely within the expertise and experience of an agency." *Ellis v. Tribune*

*Television Co.*, 443 F.3d 71, 91 (2d Cir. 2006) (internal citation omitted). *See, e.g., Drexel Burnham*, 1990 WL 302177 (rejecting primary jurisdiction argument of New York Stock Exchange on lift stay motion because the critical issue involved a legal determination within the realm of the courts).

In an analysis that addresses some of the same considerations of efficiency and expertise as the *Sonnax* test, the Second Circuit utilizes a four-prong balancing test to determine whether a "deferral" under the doctrine of primary jurisdiction is appropriate:

1. Whether the question at issue is within the conventional expertise of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

2. Whether the question at issue is particularly within the agency's discretion;

3. Whether there exists a substantial danger of inconsistent rulings; and

4. Whether a prior application to the agency has been made.

*Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006); *see In re DBSD North Am., Inc.*, 2009 Bankr. LEXIS 3036, at *12 (Bankr. S.D.N.Y. Sept. 30, 2009) (noting that "no fixed formula applies for applying the doctrine of primary jurisdiction" and concluding that referral in the instant case to the Federal Communications Commission was not warranted); *In re Magnesium Corp. of Am.*, 278 B.R. 698, 706 (Bankr. S.D.N.Y. 2002) (noting that one of the aims of primary jurisdiction is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross purposes); *see also Puerto Rico Mar. Shipping Auth. v. Fed. Mar. Comm'n*, 75 F.3d 63, 65 (1st Cir. 1996) (noting that primary jurisdiction doctrine is a "rule of 'deference' and not of jurisdiction").

### C.   The FMC Does Not Have Exclusive or Primary Jurisdiction Over Movants' Allegations

Turning to the specific Shipping Act violations alleged here, the Movants have not demonstrated that their allegations are within the exclusive or primary jurisdiction of the FMC.

Movants' allegations revolve around a central theme:  whether the Debtor prevented the Movants from meeting their contractual obligations.  *See, e.g.,* Motion, at 17 (alleging that Debtor agreed to amend these service contracts to reflect the amount of cargo actually moved and Movants relied to their detriment on these representations); Motion, at 3 (contending that Debtor "prevented the [Movants] from performing under [the service contracts]"); Motion, at 16 (asserting that, by ceasing operations, Debtor made it impossible for Movants to satisfy their contractual requirements).  Such allegations are in the nature of affirmative defenses to the underlying breach of contract claims in these adversary proceedings[4] and are matters commonly addressed by the federal courts.  *See, e.g., In re Gulf Oil/Cities Service Tender Offer Lit.*, 725 F. Supp. 712, 734 (S.D.N.Y. 1989) (addressing defense of promissory estoppels, which requires "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance on that promise, and (3) an unconscionable injury"); *Beth Israel Med. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d. Cir. 2006) (noting that waiver is a contract defense that requires the "voluntary abandonment or relinquishment of a known [contract] right"); *Inter-America Dev. Bank v. Nextg Telecom Ltd.*, 503 F. Supp.2d 687, 969 (S.D.N.Y. 2007) (discussing impossibility as a defense to breach of contract claim where there is an inability to perform as promised).[5]  Such contractual matters do not implicate the exclusive or primary jurisdiction of the FMC.  *See, e.g., New York Thruway v. Level 3 Constr., LLC*, 734 F. Supp. 2d 257, 265

---

[4]    Indeed, the Movants concede as much.  *See* Motion, ¶ 22 ("Absent allowing the [FMC] to hear the Causes of Action, this Court would be forced to either hear and determine seventy-seven affirmative defenses (one in each repetitive adversary proceeding) or craft a procedure that attempts to emulate the [FMC's] existing ability to unilaterally resolve and consolidate these issues").

[5]    While Movants at one point appear to allege that the parties' agreements are invalid in part because they do not meet the definition of "service contract" set forth in the Shipping Act, *see* Motion, ¶ 10 (citing 46 U.S.C. § 40102(20)), ¶ 27 of the Motion subsequently concedes that these contracts "are all 'service contracts' within the meaning of 46 U.S.C. § 40102(20)."

(N.D.N.Y. 2010) ("[C]ontract disputes are legal questions within the conventional expertise of
the courts and thus the doctrine of primary jurisdiction does not normally apply.").

At oral argument, the Movants relied heavily upon a FMC Circular Letter from 1989,
noting that it "raises the question of whether . . . the MQC contracts in which there is no real
valid commitment on behalf of the carrier to satisfy certain trade levels, whether those are
illusory." Transcript of Hearing, dated Sept. 26, 2011 [ECF No. 153] ("Transcript"); *id.* at 40
(characterizing the FMC Circular as "crucial"); *see* Movants' Reply Brief [ECF No. 144], at 9.
Movants' counsel maintained that answering this question "require[s] the specialized expertise of
the FMC." Transcript, at 28. The FMC Circular Letter in question explains that MQCs in
service contracts are essential terms of a service contract because use of a MQC is the "quid pro
quo for departing from the published tariff rates of the carrier that would otherwise apply." FMC
Circular Letter No. 1-89 (FMC Apr. 12, 1989) (Exhibit L to Movants' Reply Brief). The MQC
must be "meaningful" for the service contract to be valid and enforceable because:

> The failure of contract parties to fulfill the basic requirements of this quid pro quo
> not only offends the legislative scheme crafted by Congress but also could . . .
> make the service contract . . . a device to evade the carrier's tariff rates in
> violation of [the Shipping Act]. We believe that the Commission is not only
> empowered but also . . . has the responsibility to take whatever regulatory action
> may be necessary and appropriate to ensure this result.

*Id.* (citation omitted).

But Movants have not explained why or how the FMC's expertise would be needed to
resolve this question in these cases. Movants do not provide any factual allegations regarding
the actual MQCs at issue in these contracts, the amount of cargo actually shipped, or Debtor's
practices in connection with the use of MQCs. Moreover, the Movants have not explained how
the FMC's concern about whether MQCs are "meaningful"—presumably whether the MQCs are
so small as to be of no real consequence—is implicated here given that Movants were allegedly

- 15 -

unable to satisfy such MQCs.[6]  In sum, Movants' conclusory allegations fail to demonstrate that there is a technical issue or policy consideration to justify deferring to the FMC under the doctrines of exclusive or primary jurisdiction.  *See Cargo One*, FMC No. 99-24, at 13 (Oct. 31, 2000) (concluding that allegations premised on contractual commitments are not properly before the FMC absent evidence "that some extraordinary aspect of the allegation[s] distinguish it substantially from a breach [of contract] claim"); *see also YangMing Mar. Trans. Corp. v. Formost Int'l, Inc.*, 1990 WL 17729 (interpreting liquidated provision in service contract where alleged plaintiff alleged that shipper breached the contract by failing to provide carrier with minimum quantity of cargo set forth in contract).[7]

The result here is consistent with decisions from the Supreme Court and Second Circuit. While Movants rely on *Far East Conference v. United States*, 342 U.S. 570 (1952) and *U.S. Navigation Co., Inc. v. Cunard S.S. Co.*, 284 U.S. 474 (1932), neither of these cases revolved around a breach of contract but instead presented larger shipping issues "not within the conventional experience of judges or cases requiring the exercise of administrative discretion." *Far East Conference*, 342 U.S. at 574.  In *Far East Conference*, for example, the United States sued under the Sherman Act to enjoin a dual-rate system enforced in concert by steamship carriers engaged in foreign trade.  *See* 342 U.S. at 574–75.  Similarly, the plaintiffs in *Cunard* alleged that respondents entered into a conspiracy to restrain foreign trade with respect to the

---

[6]   While Movant's counsel at oral argument hinted at the notion that the contracts were written in an illusory manner, Movant's counsel subsequently conceded that the contracts are "not unusual at all" and that what was unusual "[was] the fact pattern where somebody terminates it prior to allowing the movant to perform." Transcript, at 40, 48.  But for the reasons stated above, that "unusual fact" is in the nature of a contract defense, not a technical matter requiring the specialized expertise of the FMC.

[7]   The wisdom of referring Movants' allegations to the FMC is further undermined by the fact that the Debtor is no longer in operation.  Transcript, at 82 (Debtor is "in liquidation"); *see Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 419 (5th Cir. 1976), *cert. denied*, 429 U.S. 1094 (1977) (deference under the doctrine of primary jurisdiction is "particularly inappropriate where the litigation deals with a single event which requires no continuing supervision by the regulatory agency").

transportation of cargo from the North Atlantic ports of the United States to the ports of Great

Britain and Ireland by establishment of a general tariff rate and a lower contract rate to be made

available only to shippers who agree to confine their shipments to the lines of respondents.  *See*

284 U.S. at 481.[8]

A more apt comparison to the instant case is the Second Circuit's decision in *River Plate*

*and Brazil Conf. v. Pressed Steel Car Co.*, 227 F.2d 60 (2d Cir. 1955).  Distinguishing *Far East*

and *Cunard*, the Second Circuit in *River Plate* concluded that a breach of contract action should

not be stayed pending proceedings at the Federal Maritime Board, the predecessor of the FMC.

The Court explained that the case "present[ed] no questions for determination by a Board of

special competence to which Congress has committed questions requiring administrative

expertise."  *Id.* at 63.  Applying the same reasoning, the Second Circuit more recently rejected an

invocation of primary jurisdiction in *General Elec. Co. v. Nedlloyd*, 817 F.2d 1022 (2d Cir.

1987), observing that "the administrative agency's specialization would not offer much

assistance in resolving [the] issue [in the case,]" which "involve[d] the application of common

law principles."  *Id.* at 1027–1028; *see LSB Industries, Inc.*, 736 F.2d at 12; *Zim Israel*

*Navigation Co., Ltd. v. Indonesian Export Dev. Corp.*, 1993 WL 88223 (S.D.N.Y. March 24,

1993) (district court granting summary judgment on plaintiff's claim that defendant breached a

service contract by not shipping the minimum quantity of containers and seeking damages for the

shortfall pursuant to a liquidated damages clause).[9]

---

[8]    Movants' fare no better in their reliance on *D.L. Piazza Co. v. West Coast Line*, 210 F.2d 947 (2d Cir. 1954),
where a party had sued to challenge a decision issued by the Federal Maritime Board.  The Second Circuit
concluded that the district court had no jurisdiction to review the Board's decision to deny reparations, a
decision that could only be appealed – by statute – to a federal court of appeals.  The *D.L. Piazza* decision
therefore provides no support for Movants' claim that the issues here should be heard in the first instance by the
FMC.

[9]    Debtor argues that the forum selection clause in these service contracts prescribes this Court as the proper
jurisdiction for all disputes over these service contracts.  But the Court does not rely on the forum selection

D.    **Application of the Sonnax Factors**

Turning back to the *Sonnax* factors in light of the jurisdictional discussion above, the

Court concludes that, on balance, they favor denying relief from the automatic stay.  The most

relevant Sonnax factor—the fourth factor—concerns whether a specialized tribunal with the

necessary expertise has been established to hear the cause of action.  Given that Movants have

not demonstrated that these cases implicate the exclusive or primary jurisdiction of the FMC, the

fourth *Sonnax* factor favors a denial of the Motion.

The first and tenth *Sonnax* factors also favor the denial of the Motion.  These factors

address whether stay relief would result in a partial or complete resolution of the issues, and

whether the interests of judicial economy would be served.  Movants seek to lift the stay based

upon the inefficiencies of proceeding with the multiple adversary proceedings on the same or

similar issues.  *See* Motion, ¶ 22 ("Absent allowing the [FMC] to hear the Causes of Action, this

Court would be forced to . . .  hear and determine seventy-seven affirmative defenses (one in

each repetitive adversary proceeding)").  But that difficulty will exist regardless of whether the

issues are before the FMC or this Court.  As noted by Debtor, this Court may address this

problem through the appropriate use of Rule 7042 of the Federal Rules of Bankruptcy Procedure.

Rule 7042 provides that, where there are common issues or law or fact, the Court may join for

hearing or trial all matters at issue, consolidate the actions, or "issue any other orders to avoid

---

clause in reaching its decision because the clause does not satisfy the four-part test articulated by the Second
Circuit in *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007) (in addressing the enforceability of
a forum selection clause, a court should consider: (1) whether the clause reasonably communicated to the party
resisting enforcement; (2) whether the clause is mandatory or permissive; (3) whether the claims and parties
involved are subject to the forum selection clause; and (4) whether the party resisting enforcement rebuts the
presumption of enforceability).  While parts one and three of the test are satisfied, the forum selection clause
fails to meet part 2 because the clause does not specifically exclude the jurisdiction of other courts.  *See, e.g.,*
*John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distrib. Inc.*, 22 F.3d 51, 52–53 (2d Cir.
1994) (the language, "[a]ny dispute . . . shall come within the jurisdiction of the competent Greek Courts," is
permissive); *Credit Alliance Corp. v. Crook*, 567 F. Supp. 1462, 1462 (S.D.N.Y. 1983) (the language,"[the
parties] agree to the venue and jurisdiction of any court in the State and County of New York," is permissive
and does not indicate that New York is the exclusive forum).

unnecessary cost or delay." In any event, factors one and ten favor the Debtor given that the FMC lacks jurisdiction to hear the breach of contract allegations. *See New York State Thruway*, 734 F. Supp. 2d at 270 (denying motion to stay breach of contract litigation based on primary jurisdiction, noting that "there is no petition, nor can there be, before the FCC to determine a breach of contract claim").

The second *Sonnax* factor addresses whether there is a lack of connection or interference with the bankruptcy case. As this is a Chapter 15 case where foreign recognition has already occurred, Movants argue that lifting the stay does not raise the same concerns about the cost of delay as would exist in a large Chapter 11 case. *See In re SPhinX, Ltd.*, 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2006) (stating that "Chapter 15 pertains to a case ancillary to a foreign proceeding that is 'recognized' by the court, whether the foreign proceeding is a 'foreign main proceeding' or a 'foreign nonmain proceeding'"); *In re Millennium Global Emerging Credit Master Fund Ltd.*, 2011 WL 3805787 (Bankr. S.D.N.Y. 2011) (noting that "Chapter 15 contemplates a short and relatively simple petition for recognition"). But Debtors have presented evidence that a delay in resolution of these adversary complaints will adversely impact the foreign main proceeding by, among other things, delaying the reconciliation process in the Danish court. *See* Declaration of Danish Reconstructor Jorgen Hauschildt, dated Sept. 16, 2011, ¶¶ 30–39 [Docket No. 126]. Given these competing considerations, the Court concludes that the second factor does not favor either party.

The remaining two *Sonnax* factors also are not implicated. As to the seventh factor, the Court does not believe that allowing the FMC to proceed will prejudice or favor the interests of other creditors. The eleventh factor, whether the parties are ready for trial in the other proceeding, is similarly of little relevance given that the Debtors and Movants are not ready for

trial in this Court or the FMC. *See* Transcript, at 58 (counsel to movant, UPS Freight Service, Inc., stating on the record that "[w]hether the parties are ready for trial" is "not really relevant" as "the cases are both in their infancy").

The Movants raise one final argument requiring the Court's attention. They claim that the automatic stay should be lifted because this Court lacks jurisdiction to adjudicate these adversary proceedings in light of the Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern*, the Supreme Court concluded that a bankruptcy court lacked the constitutional authority to enter a final judgment on a state law counterclaim that was not resolved in the process of ruling on a creditor's proof of claim. *Id.* at 2620. As a threshold matter, however, it is premature to determine under *Stern* whether this Court may render a final judgment in any of these numerous adversary proceedings. It is true that these are adversary actions by a foreign representative to augment the size of the estate. *See In re Fairfield Sentry Ltd.*, 458 B.R. 665, 683 (S.D.N.Y. 2011) (noting that mere fact that recovery in case would benefit the foreign estate is not sufficient to confer "core" jurisdiction on a bankruptcy court). But the cases have only just begun, and the Movants have not yet filed answers to the Debtor's complaints. Answers to the adversary complaints would require the Movants to address the fundamental question of whether these adversary proceedings are core or non-core proceedings, information that would be beneficial in determining whether Rule 9033 should be invoked. *See* Rules 7012 and 7018 of the Federal Rules of Bankruptcy Procedure (specifying that pleadings should address whether a proceeding is core or non-core and, accordingly, whether the matter should be decided by the bankruptcy court); Rule 9033 of the Federal Rules of Bankruptcy Procedure (requiring bankruptcy judges to issue proposed findings of fact and conclusions of law in non-core proceedings heard pursuant to 28 U.S.C. § 157(c)(1)).

Indeed, nothing in today's decision implicates *Stern*.  The Supreme Court in *Stern* held

that, while the bankruptcy court had the statutory authority under Section 157 of the Bankruptcy

Code to enter judgment on a widow's counterclaim in a bankruptcy adversary proceeding, the

bankruptcy court lacked the constitutional authority to do so under Article III.  The heart of the

*Stern* decision goes to a bankruptcy court's ability to render a final judgment, a matter that is not

at issue today.  *See Walker, Truesdell, Roth & Assocs. v. The Blackstone Group, L.P. (In re*

*Extended Stay)*, 2011 WL 553228, at *6 (S.D.N.Y. Nov. 10, 2011) ("Withdrawing the reference

simply due to the uncertainty caused by *Stern* is a drastic remedy that would hamper judicial

efficiency on the basis of a narrow defect in the current statutory regime identified by *Stern*."); *In*

*re Refco*, 2011 WL 5974532, at *8–9 (Bankr. S.D.N.Y. Nov. 30, 2011) (noting that precedent on

Article III "[does] not admit to an easy synthesis," thereby making line-drawing necessarily

difficult) (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 847 (1986)).  If

this Court eventually determines that it lacks jurisdiction to enter a final judgment in any of these

adversary proceedings, this Court may issue proposed findings of fact and conclusions of law

pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure.  *See* Amended Standing

Order of Reference M-431, dated January 31, 2012 (Preska, Acting C.J.) (providing that where a

bankruptcy court cannot enter final judgment in a core proceeding, it may hear the proceeding

and submit proposed findings of fact and conclusions of law).  *See Retired Partners of Coudert*

*Brothers Trust v. Baker & McKenzie*, 2011 WL 5593147, *22 (S.D.N.Y. Sept. 23, 2011)

(converting bankruptcy court ruling into report and recommendation and noting that "Congress

wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III

permitted them to do so, and to issue recommended findings subject to *de novo* review in the

District Court whenever it did not."); *Refco Inc.*, 2011 WL 5974532 (concluding that the court

- 21 -

had authority to enter final judgment on avoidance claims but in any event has the power to

submit proposed conclusions of law to the District Court).  Such proposed findings of fact and

conclusions of law would be reviewed by the United States District Court for the Southern

District of New York, which is the forum for dispute resolution agreed to by all parties to these

service contracts.[10]

**E.**     **Conclusion**

For the reasons set forth above, the Court denies the Motion to lift the automatic stay.

The Debtor shall settle an order on three days notice.

Dated:  **February 10, 2012**
New York, New York

_/s/ Sean H. Lane_
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

---

[10]    In any event, it is unclear how *Stern* supports the relief requested in the Motion given that the alternative forum urged by Movants, the FMC, lacks the authority by statute to hear these breach of contract claims.